**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ADIRONDACK TRUST COMPANY,**

                    **Plaintiff,**              **1:09-cv-1313**
                                                       **(GLS\DRH)**
          **v.**

**ST. PAUL MERCURY INSURANCE**
**COMPANY,**

                    **Defendant.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Snyder, Kiley Law Firm | JAMES S. COX, ESQ. |
| P.O. Box 4367 | |
| 160 West Avenue | |
| Saratoga Springs, NY 12866 | |
| | |
| **FOR THE DEFENDANT:** | |
| McElroy, Deutsch Law Firm | RICHARD S. MILLS, ESQ. |
| 88 Pine Street | |
| 24th Floor | |
| New York, NY 10005 | |

**Gary L. Sharpe**
**District Court Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Adirondack Trust Company brings this action seeking a

declaration of coverage under a financial institution bond issued by defendant St. Paul Mercury Insurance Company. (*See* Compl., Dkt. No. 1.) Pending is St. Paul's motion to dismiss Adirondack's complaint. (Dkt. No. 6) For the reasons that follow, the motion is granted.

## II. Facts

Plaintiff Adirondack is a banking corporation insured by defendant St. Paul under Financial Institution Bond No. 010-F-0457B0620. (*See* Compl. ¶¶ 1, 4, Dkt. No. 1.) On April 24, 2009, an Adirondack customer deposited into his account a Citibank cashiers check for $498,580.90. (*Id.* at ¶ 9; *see also* Compl., Ex. C at 1, Dkt. No. 1.) On April 27, before the check cleared, the customer instructed Adirondack to wire substantially all of the funds to the Bank of China, which Adirondack did. (*Id.* at ¶ 10.) Several days later, Adirondack learned that the check was fraudulent. (*Id.* at ¶ 11.) However, Adirondack was unsuccessful in recalling the wire or otherwise recovering the funds. (*Id.* at ¶¶ 12-13.)

Based on these facts, Adirondack sought coverage under Insuring Clause D1(a) of the Bond, which covers "[l]oss resulting directly from ... [f]orgery or alteration of, on, or in, any Negotiable Instrument." (*Id.* at ¶ 6; Compl., Ex. A, Bond at 4, Dkt. No. 1.) By letter dated June 30, 2009, St.

2

Paul denied Adirondack's claim under Exclusion (q) of the Bond, which excludes from coverage:

> Loss resulting directly or indirectly from payments made or withdrawals from a depositor's account involving items of deposit which are not finally paid for any reason, including but not limited to forgery or any other fraud ....

(Compl., Ex. A, Bond at 16, Dkt. No. 1.) St. Paul explained that because "the Loss concerns a fraudulent/counterfeit Cashiers Check deposited into a customer's account, followed by a subsequent wire transfer before said Cashiers Check cleared" coverage for the loss was precluded under Exclusion (q). (Ex. F to Compl. at 1,2, Dkt. No. 1.)

Challenging St. Paul's denial, Adirondack commenced this action for declaratory and other relief, claiming that Exclusion (q) should not apply. St. Paul now moves to dismiss Adirondack's complaint, arguing that Exclusion (q) unambiguously excludes Adirondack's loss from coverage.

### III.  **Standard of Review**[1]

The standard of review under FED. R. CIV. P. 12(b)(6) is well

---

[1] This action was removed to this court pursuant to 28 U.S.C. § 1441(a) based on this court's diversity jurisdiction under 28 U.S.C.§ 1332(a)(1).  (*See* Dkt. No.1.)  Accordingly, the court will apply federal procedural law and New York State substantive law to the claims before it.  *See Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 427 (1996); *see also Hanna v. Plumer*, 380 U.S. 460, 473-74 (1965); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *McCarthy v. Olin Corp.*, 119 F.3d 148, 153 (2d Cir. 1997).

3

established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its decision in *Dixon v. Albany County Bd. of Elections*, No. 1:08-CV-502, 2008 WL 4238708, at *2 (N.D.N.Y. Sept. 8, 2008).

## IV.  **Discussion**

Under New York law, insurance contracts are construed and interpreted like other business contracts.  *In re Estates of Covert*, 97 N.Y.2d 68, 76 (N.Y. 2001).  Accordingly, in resolving a dispute over insurance coverage, the court must first look to the language of the policy.  *Consol. Edison Co. of N.Y. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 221-22 (N.Y. 2002).  If the terms of the policy are clear and unambiguous, the court must enforce the policy according to the plain meaning of those terms.  *See Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (N.Y. 2002).  Similarly, where an insurer asserts a policy exclusion to disclaim coverage, a court must enforce that disclaimer if the exclusion is "stated in clear and  unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case."  *See Cont'l Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 652 (N.Y. 1993) (citations omitted).

4

Whether policy terms are clear or ambiguous is a question of law for the court. *S. Rd. Assocs., LLC v IBM*, 4 N.Y.3d 272, 278 (N.Y. 2005). Contract language is ambiguous if it is susceptible to multiple meanings when viewed in the context of the entire agreement. *See Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993). No ambiguity exists, however, where contract language has "a definite and precise meaning" that is not reasonably capable of multiple interpretations. *Id.* (internal citations and quotation marks omitted).

Here, St. Paul argues that its disclaimer should be enforced because Exclusion (q) unambiguously precludes coverage for Adirondack's loss. The court agrees. Adirondack neither disputes that Exclusion (q) is written in plain, clear terms, nor alleges that it is susceptible to multiple interpretations. And having reviewed the clause, the court discerns no ambiguity or lack of clarity.[2] Indeed, the Bond plainly states that "it does not cover ... (q) Loss resulting directly or indirectly from payments made or

---

[2] Notably, other courts that have applied this exclusion have concluded similarly, finding "the clause as a whole 'unambiguous,' and [giving] the language its ordinary meaning." *Broadway Nat'l Bank v. Progressive Cas. Ins. Co.*, 775 F. Supp. 123, 128 (S.D.N.Y. 1991), *aff'd*, 963 F.2d 1522 (2d Cir. 1992) (citing *Mitsui Mfrs. Bank v. Fed. Ins. Co.,* 795 F.2d 827, 830 (9th Cir. 1986), and *Bradley Bank v. Hartford Accident & Indem. Co.*, 737 F.2d 657, 660 (7th Cir. 1984)).

withdrawals from a depositor's account involving items of deposit which are not finally paid for any reason." (Compl., Ex. A, Bond at 16, Dkt. No.1.) There is also no dispute concerning the fundamental facts underlying Adirondack's loss. Adirondack does not deny that the Citibank check was an item of deposit, that it was not finally paid, or that the loss arose from the payment of funds involving that unpaid item. Nevertheless, Adirondack claims that Exclusion (q) should not be enforced and that its loss should be covered.

Adirondack's main argument is that Exclusion (q) is "ambiguous" because it renders [Insuring Clause D1(a)] meaningless."[3] (Pl. Mem. of Law at 4, Dkt. No. 10.) Specifically, Adirondack claims that interpreting Exclusion (q) as written would bar D1(a) coverage for *all* losses involving payments made or withdrawals from deposited forged or altered negotiable instruments. (*Id.* at 5.) However, a plain reading of Exclusion (q) reveals that this simply is not the case. Indeed, the Exclusion bars coverage granted by D1(a) only to the extent that a loss satisfies the triggering

---

[3] While it is true that "an insurance contract should not be read so that some provisions are rendered meaningless," *County of Columbia v. Cont'l Ins. Co.*, 83 N.Y.2d 618, 628 (N.Y. 1994) (citation omitted), it is not clear how this argument relates to ambiguity. Regardless, that issue is of no moment since, as explained above, Adirondack's contention does not advance its argument for coverage.

6

criteria stated above.  And under that criteria, it is clear Exclusion (q) would not bar D1(a) coverage in a situation similar to the present one unless the insured permits, as Adirondack did here, the withdrawal or payment of money against uncollected funds.  Thus,

while Exclusion (q) is clearly written to avoid coverage for the risks associated with permitting premature payment or withdrawal—risks an insured bank is in the best position to avoid—it does not, as Adirondack contends, go so far as to nullify D1(a) coverage with respect to deposited negotiable instruments.

Adirondack's remaining argument also fails.  Adirondack claims, through a few general assertions, that Exclusion (q) should not be enforced because an ambiguity or conflict arises when it is read in conjunction with another policy exclusion, Exclusion (r).  (*See id.* at 3, 7; *see also* Compl. ¶¶ 24-26, Dkt. No. 1.)  In relevant part, Exclusion (r) provides that the Bond does not cover:

> Loss resulting directly or indirectly from counterfeiting, except when covered under Insuring Clause[] ... D1(a) but only as respects Negotiable Instruments ....

(Compl, Ex. A, Bond at 16, Dkt. No. 1.)  While not entirely clear, it appears that Adirondack is contending that Exclusion (r), through its exception,

7

preserves D1(a) coverage that Exclusion (q) would otherwise preclude, thereby creating a tension that must be resolved in favor of coverage. This argument is unavailing.

Initially, in affording the language of the exclusions its plain meaning, the court perceives no basis for crediting Adirondack's conclusory assertions that the exclusions conflict. Exclusion (q) clearly eliminates from coverage the specific risks associated with permitting the payment or withdrawal of money against uncollected funds. Exclusion (r) further excludes from coverage losses resulting from counterfeiting *unless* such loss is otherwise covered under D1(a) with respect to negotiable instruments. In other words, Exclusion (r) preserves D1(a) coverage for losses resulting from counterfeiting involving negotiable instruments only to the extent that such losses are not already excluded. Because a loss excluded under Exclusion (q) would not be covered under D1(a), Exclusion (r), by its terms, does not preserve coverage for that loss and cannot, in line with general principles of contract interpretation, be read to grant or reinstate coverage for an already excluded loss. *See Raymond Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 5 N.Y.3d 157, 163 (N.Y. 2005) (explaining that policy exclusions must be read to subtract from coverage,

and cannot be interpreted to grant or resurrect it).

More importantly, Adirondack's argument—which is premised on a cumulative reading of Exclusions (q) and (r)—must fail as a matter of law. As a general principle, "[e]xclusions in policies of insurance must be read *seriatim*, not cumulatively, and if any one exclusion applies there can be no coverage." *Zandri Constr. Co. v. Firemen's Ins. Co. of Newark*, 81 A.D.2d 106, 109 (3d Dep't 1981) (citing *Weedo v. Stone-E-Brick, Inc.*, 81 N.J. 233, 247 (N.J. 1979)), *aff'd*, 54 N.Y.2d 999 (N.Y. 1981). This is so "regardless of inferences that might be argued on the basis of exceptions or qualifications contained in other exclusions." *Weedo*, 81 N.J. at 248 (citation and internal quotation marks omitted.) In applying this principle, New York courts have consistently found that when policy provisions "clearly and specifically exclude certain risks, such provisions take precedence over other clauses which may describe or acknowledge general areas of coverage." *Jakobson Shipyard, Inc. v. Aetna Cas. & Surety Co.*, 775 F. Supp. 606, 612 (S.D.N.Y. 1991) (citations and internal quotation marks omitted). Thus, where an exclusion specifically applies, an insurer may deny coverage, and it is irrelevant that another exclusion may also apply or appears inconsistent with the asserted exclusion. *See*

9

*Tradin Organics USA, Inc. v. Md. Cas. Co.*, 325 Fed. Appx. 10, 11 (2d Cir. Apr. 16, 2009) (unpublished) (citing *Zandri Constr. Co.*, 81 A.D.2d at 109, and explaining that "[s]ince [an] exclusion clearly applied to bar coverage ... it was irrelevant whether [another] exclusion—and/or its exception—also applied"); *see also, e.g.*, *Sampson v. Johnston*, 272 A.D.2d 956, 956 (4th Dep't 2000) (explaining that because certain exclusion precluded coverage, "the fact that another exclusion may have been inconsistent with [the applicable] exclusion ... is irrelevant").

    Here, it is clear that Adirondack's loss falls squarely within the reach of Exclusion (q).  As discussed above, it is undisputed that the Citibank check was an item of deposit, that it was not finally paid, and that Adirondack's loss arose from the payment of funds involving that unpaid item.  With facts plainly triggering the clear restrictions of Exclusion (q), St. Paul was justified in denying coverage under that exclusion, and Adirondack's attempt to undermine that denial through reference to another policy exclusion, or through a cumulative reading of exclusions, cannot succeed.

    Therefore, the court finds that St. Paul properly disclaimed coverage and therefore grants its motion to dismiss Adirondack's complaint.

10

## V. **Conclusion**

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that St. Paul Mercury Insurance Company's motion to dismiss Adirondack Trust Company's complaint (Dkt. No. 6) is **GRANTED**; and it is further

**ORDERED** that Adirondack Trust Company's complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

June 11, 2010
Albany, New York

*/s/ Gary L. Sharpe*
United States District Court Judge